UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SCHOOL BOARD OF THE PARISH OF          CIVIL ACTION
ST. CHARLES

VERSUS                                 NO: 04-2511

SHELL OIL CO.                          SECTION: "J" (1)

**ORDER AND REASONS**

Before the Court is Defendant's Motion for Summary Judgment on the Quantum Phase (Rec. Doc. 215).  For the reasons stated below, the Court **DENIES** Defendant's motion, and **GRANTS** summary judgment in favor of the Plaintiff.

**Background**

This action arises out of a tax dispute between the School Board of the Parish of St. Charles (the "Parish") and Shell Oil Company ("Shell").  On June 6, 2007, this Court issued its Findings of Fact and Conclusions of Law (Rec. Doc. 192), wherein, the Court found that Shell was not required to pay sales tax on chemical waste gas that is manufactured at its facility in St. Charles Parish.  The Court also found that Shell had underpaid its taxes on transactions between Shell and Union Carbide and Transcontinental Refining.  The parties are in

agreement that Shell's underpayment on the Union Carbide transactions totals $458,734.00.

However, Shell suggests that because it has paid approximately $2.4 million in use tax on chemical waste gas, it is entitled to an offset or credit for the amount that it owes. Shell's specific argument is that because it overpaid its taxes by $2.4 million, and only underpaid by $458,734.00, there is no net underpayment and the damages to the Parish are zero.  The parties indicate that Shell's overpayment is due to, in part, a 1986 agreement between the School Board and Shell where Shell agreed to pay "1.5% tax not accrued  on boiler fuel due to these taxes being pledged to secure . . . bonded indebtedness. . . . Shell will also continue to accrue 1.5% tax on [chemical waste gas and boiler fuel] until such time that all bonds secured by these taxes have matured and all funds necessary for their payment have been received." (Rec. Doc. 218, Ex. A).  The parties seem to agree that at the very latest the bonds matured by February 1, 1999.  However, Shell continued to pay the tax on the chemical waste gas at the specified rate after February 1, 1999.  The parties seem to agree that Shell's overpayment post

1999 is still sufficient to exceed the amount of under payment.

The Parish insists that because the overpayment in question was not paid under protest, there is no mechanism in Louisiana law which would permit the Court to allow an overpayment in one area to be credited against an underpayment in another area.

## Applicable Law

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588 (1986).

When considering a motion for summary judgment filed by one party, a court is permitted to grant summary judgment in favor of the other party, as long as there are no material facts in dispute, and all parties were adequately warned that the motion may be treated as such. *See British Caledonian Airways, Ltd. v. First State Bank,* 819 F.2d 593, 595-96 (5th Cir. 1987); *Landry*

3

*v. G.B.A.*, 762 F.2d 462, 463 (5th Cir. 1985).   In this case, the Court is able to determine that there are no material facts in dispute.   Further, because the Court and the parties expected cross motions for summary judgment to be filed, each party should have been on notice that it should come forward with all evidence.   Therefore, this Court is permitted to consider summary judgment in favor of either party.

**Discussion**

A. Payment Under Protest

The tax at issue in this case arises under the authority of the St. Charles Parish School Board.  That entity has issued several ordinances related to tax collection. These ordinances are not materially different from tax ordinances passed by most other local taxing authorities in Louisiana.  The ordinances contain provisions relating to the collection of taxes and the procedures required for a tax refund.  Further, the ordinances state that a taxpayer has a right of action to afford a remedy at law for any grievance under the tax ordinance, so long as the taxpayer notifies the taxing authority at the time of the payment of his intention to file suit for recovery of the tax. *See* St. Charles Parish School Board, La., General Sales and Use Tax Ordinance (Sept. 1, 1965)(as amended) § 11.01.

In Louisiana, it has long been the law that this so-called payment-under-protest scheme is required for a taxpayer to recover taxes that the taxpayer feels has been wrongly assessed. *See e.g., Kean's P'ship v. Parish of E. Baton Rouge*, 685 So. 2d 1043, 1046-47 (La. 1996); *Willis-Knighton Med. Ctr. v. Caddo-Shreveport Sales & Use Tax Comm'n*, 862 So. 2d 358, 362-63 (La. App. 2 Cir. 2003) *writs denied on this issue*, 903 So. 2d 1071 (La. 2004).  In *Kean's* the Louisiana Supreme Court concluded that in order to preserve the meaning of the payment-under-protest requirement, judicial review of a local tax is only guaranteed when a taxpayer avails himself of the protest requirements.  *Kean's P'ship*, 658 So. 2d at 1046.

## B. Refund vs. Credit vs. Offset

Shell insists that there is a difference between a tax refund which is contemplated by the ordinance and a tax credit which is what Shell seeks.  Louisiana courts have not defined a difference between the two words, and this Court notes that the difference may be mere semantics.  *Black's Law Dictionary* defines "refund" as "the return of money to a person who overpaid"  BLACK'S LAW DICTIONARY (8th ed. 2004).  "Credit" is defined in its most relevant sense, as "the availability of funds." *Id.*  Finally, "offset" is defined as "[s]omething (such

as an amount or claim) that balances or compensates for something else." *Id.*   The word "refund" contemplates the returning of money to a person.   To use the facts from this case, a "refund" would ensue if the Court ordered the Parish to pay Shell the approximately $1.9 million that it overpaid in taxes.   Under that definition, Shell is not asking the Court for a refund, and is asking the Court for an offset.   As defined above, the word "offset" envisions a situation where Shell's overpayment balances or compensates for Shell's underpayment. *Black' Law Dictionary* refers to "offset" and the closely-related word "set-off" as terms most often used in courts of equity.

However, while the words may mean different things, that difference may not matter much according to Louisiana law.   In *City of New Orleans v. Davidson*, 30 La. Ann. 541 (La. 1878), the Louisiana Supreme Court considered whether a taxpayer could offset a tax owed to the City by "the sum he paid . . . in excess."   After noting that a tax debt is not a debt "in the usual and ordinary sense of the word" the *Davidson* court held that "[t]axes are not demands against which a set-off is admissible."   *Id.* The court further held that if taxes that are owed could be "reduced by a deduction of such sums as had been already wrongfully demanded and paid, the revenues requisite for

the support of government might be diminished so largely as to occasion public detriment." *Id.* Therefore, the *Davidson* court concluded that a taxpayer cannot offset overpayment of taxes in one year against underpayment of taxes in a different year.

In addition, the Louisiana First Circuit Court of Appeal considered a similar case in *Union Exploration Partners Ltd. v. Secretary of the Department of Revenue & Taxation*, 610 So. 2d 854 (La. App. 1 Cir. 1992).  In *Union Exploration*, the court considered the claim of a taxpayer who paid taxes from 1982 to 1985 on diesel fuel used in boats operating in the Gulf of Mexico.  The court found that the taxpayer had paid in excess of $360,000.00 for this use tax.  However, the Louisiana Supreme Court later disallowed the collection of diesel fuel use taxes. *Id.* (*citing Sales District No. 1 of the Parish of Lafourche v. Express Boat Co.*, 500 So. 2d 364 (La. 1987), *superseded by statute as recognized in Mallard Bay Drilling, Inc. v. Kennedy*, 914 So. 2d 533 (La. 2005))[1].  At the same time, the state taxing authority assessed that Union Exploration underpaid its sales taxes by $362,526.45.[2] Union Exploration paid the underpayment

---

[1] The Supreme Court held that the tax was not owed <u>after</u> the taxes had been paid.

[2] Though it is not clear, it appears that the overpayment is related to some other tax not necessarily related to the tax on diesel fuel.

amount under protest and filed suit seeking a refund of the
amount overpaid.   In the alternative, Union Exploration sought
to credit, or offset, the overpayment against the underpayment.
The court held that it could only authorize a credit if the
taxpayer was entitled to a refund. *Id.* (*citing* LA. REV. STAT. ANN.
§ 47:1622; *Gulf Refining Co. v. McFarland*, 157 La. 713, 103 So.
17 (1925)).   Therefore the *Union Exploration* court held that the
"general law of compensation cannot apply to provide a credit
where the legislature has specifically limited the credits." *Id.*
at 856.

To be sure, almost every case considered by Louisiana
courts related to this issue concerns a taxpayer filing suit
seeking a refund for taxes paid.   However, in this case, the
Parish has filed suit against Shell seeking payment of
previously unpaid taxes.   At oral argument, Shell insisted that
because the Parish filed suit seeking payment for all taxes not
paid during the time period, the Parish must prove that it
suffered aggregate damages in order to receive compensation.
Shell's argument presupposes that proving damages is an element
of the Parish's case.[3]   Numerous courts in Louisiana have held

---

[3] The exact wording of Plaintiff's prayer for relief is as
follows:
"I.   There be judgment against Defendant for all taxes,

that an action involving the payment of taxes does not follow
the same rules as other types of actions.  *See Dupre v. City of
Opelousas*, 108 So. 479, 480-81 (La. 1926)("[T]he laws regulating
the collection of taxes and the right to recover any part of
them, after payment has been made, are, we might say, in the
very nature of things sui generis."); *Convent Marine Cos. v.
State*, 603 So. 2d 790, 794 (La. App. 1 Cir. 1992)("[T]he laws
regulating the collection of taxes are *sui generis*."); *Gillette
Tire Distribs. v. City/Parish of E. Baton Rouge*, 345 So. 2d
1255, 1256 (La. App. 1 Cir. 1977).  It does not appear to be the
law in Louisiana, that the taxing authority is required to plead
with specificity the exact amount underpaid for each and every
type of tax owed.  Indeed the Federal rules only require that a
Plaintiff state "a short and plain statement of the claim
showing that the pleader is entitled to relief."  FED. R. CIV. P.
8.  Further, it cannot be said that the Parish is seeking
payment for "damages" as that term is generally employed.
Rather the Parish is seeking judgment for taxes not paid.  Due
to the *sui generis* nature of tax law, the Parish is not
"damaged" in this lawsuit, and therefore the Defendant cannot

---

penalties, negligence penalties, interest, audit costs and
attorney fees owed by Defendant to the St. Charles Parish School
Board for its own account and as collecting agent for the Parish

argue compensation or a lack of damages.  *See Davidson,* 30 La. Ann. at 541.

Because Louisiana law provides that an offset can only be granted if the taxpayer is entitled to a refund, the Court must consider whether Shell is entitled to a refund for the taxes that it overpaid.  The payment-under-protest procedure, described above must be used when there is a genuine issue of law or fact as related to the payment of the taxes.

Shell points to LA. REV. STAT. ANN. § 47:1621(B)(3)in support of its argument that it is due a refund.  That section provides that a taxpayer is due a refund for an overpayment if "the overpayment was the result of an error, omission, or a mistake of fact of consequence to the determination of the tax liability."  *Id.*  The question, therefore, before the Court is whether or not the payment of the tax on the chemical waste gas was a mistake of fact.  *Black's Law Dictionary* defines "mistake of fact" as a "mistake about a fact that is material to the transaction."  BLACK'S LAW DICTIONARY (8th ed. 2004).

A determination of whether something amounts to a mistake of fact is necessarily a fact-intensive inquiry. In this case, there does not seem to be any mistake related to a fact that is

Council of St. Charles Parish."  (Rec. Doc. 1, at 11).

material to the transaction.  Shell claims that the fact that it
paid taxes after the expiration of the bonds in 1999 is a
mistake of fact.  The essential claim is that Shell no longer
owed tax after the expiration of the bonds in 1999, and any
payment after that date must be a mistake of fact.  *See also
Marathon Petroleum Co. v. Thiac*, 547 So. 2d 1091, 1091-92 (La.
App. 5 Cir. 1989)(holding that when a petroleum company paid
taxes on its boiler fuel, that was a mistake of fact).

    In *Marathon*, the taxpayer erroneously paid taxes on all
refinery gas except that used as boiler fuel which was the only
refinery gas subject to taxation.  The court held that this
situation is a clear mistake of fact.  It would seem that
Marathon Petroleum simply made a clerical error where it paid
the wrong taxes.  Such an error is the mistake of fact that the
statute envisions.  Most importantly, in the *Marathon Petroleum*
case, there does not seem to be any question of law that no tax
was owed on the refinery tax that was erroneously paid, and
there is no question of law that tax was not owed on the boiler
fuel.  Therefore, the court could easily conclude that the
payments at issue constituted a mistake of fact.

    The case at bar is materially different.  The parties have
actually litigated whether the production of the chemical waste

11

gas was taxable.  The mere fact that the Court concluded that the tax was not owed on the chemical gas does not mean that there was not a question of law about it before the Court.  In *Willis-Knighton*, the court considered whether a nuclear camera was subject to sales or use tax or whether it should be considered a component part of the hospital.  862 So. 2d at 363-64.  The court first held that the taxpayer would not be entitled to a refund of the taxes already paid on the nuclear camera.  The court held that because the director of the Caddo-Shreveport taxing authority determined that there was a question of law or fact related to whether the tax should have been paid, and the tax was not paid under protest, it could not be refunded under the statute.  The court indicated that it would not overturn the decision of the director unless it was "plainly wrong."  *Willis-Knighton*, 862 So. 2d at 363.[4]

In this case, the Court determined that taxes were not owed on chemical waste gas produced.  However, that was a question of law that the Court was asked to determine.  The Parish vigorously fought for taxation of the chemical waste gas, and there was clearly a legal question of whether the waste gas

---

[4]In *Willis-Knighton*, the court eventually determined that nuclear cameras were not component parts and therefore were subject to sales and use tax.

could be taxed.  Furthermore, the mere fact that Shell and the
Parish entered into an agreement that purported to "settle" the
differences between the parties as it relates to the tax on
chemical waste gas is of no moment.  The Parish never agreed
that the waste gas was not taxable, but rather that Shell would
pay 1.5% through the time the bonds matured.[5]

There may be a question of fact as to whether the agreement
extinguished the obligation to pay or not.  However, that is not
the question before the Court.  The question before the Court
remains whether Shell is entitled to an offset for the payments
that it made.  Offsets are only allowed when a party is entitled
to a refund, and this Court has determined that Shell is not
entitled to a refund, as there is no mistake of fact which would

---

[5] Whether the 1986 letter is a "compromise" as defined by
the *Louisiana Civil Code* is not really at issue in today's
litigation.  Shell makes the alternative argument that the
letter is a compromise which settled the difference between the
parties with relation to the tax.  *See* LA. CIV. CODE ANN. art.
3071.  Shell notes that once a tax claim is reduced to judgment,
it is no longer a tax claim, and is an established debt like any
other civil judgment.  *Collector of Revenue v. Pioneer Bank &
Trust Co.*, 196 So. 2d 270, 273 (La. 1967).  Therefore Shell
argues if it continued to pay wrongly on the contract, it should
be entitled to a refund of payments under application of the
code article relating to obligations that do not exist.  *See* LA.
CIV. CODE ANN. art. 2300 ("A thing is not owed when it is paid or
delivered for the discharge of an obligation that does not
exist.").  However, for the same reasons that this Court finds
that there was no mistake of fact in Shell's payment of the
chemical waste taxes, this Court must also find that the letter

permit it.

### C. Penalties, Interest, Audit Costs, and Attorneys' Fees

The Parish seeks, in addition to the $458,734.00 in underpayments, $863,145.91 in interest, penalties, audit fees, and attorneys' fees.[6]  The penalties and fees are assessed under the authority of section 9 of the Parish tax ordinance. Penalties and interest are assessed under section 9.03. Interest is assessed at the rate of 6% per year.  Penalties are assessed at 5% for each thirty days of delinquency not to exceed 25% of the aggregate tax due.  Finally, the ordinance provides that attorneys' fees are assessed at the rate of 10% of the aggregate of the tax, interest, and penalty.  St. Charles Parish School Board, La., General Sales and Use Tax Ordinance (Sept. 1, 1965)(as amended) § 9.03.  Further, the ordinance provides that if the taxing authority is required to examine the books of the taxpayer to make an estimate of the tax due, then the taxing authority is permitted to add to the assessment the cost of such an examination.  *Id.* § 9.04.

Shell makes several arguments as to why the Parish is not entitled to these fees.  The first argument is that attorneys'

---

does not settle the issue of whether the tax is owed.
   [6] The Parish asserts that Shell owes, $480,203.24 in interest, $137,662.45 in penalties, $137,620.24 in audit costs,

fees and penalties in general may not be assessed unless the taxpayer actually underpaid his taxes. *See Bridges v. Lyondelle Chem. Co.*, 938 So. 2d 786, 791-92 (La. App. 1 Cir. 2006). The *Lyondelle* court considered a situation where the trial court determined that in the aggregate, the taxpayer did not owe any taxes, even though it was found to have underpaid its taxes for some of the tax years in question. *Id.* The court held that for the purposes of the attorneys' fees provision of Louisiana law, fees are only due as a percentage of the amount "ultimately determined to be due." *Id.* In *Lyondelle*, the court of appeal concluded that because no payment was owed the Department of Revenue, the Department could not collect attorneys' fees. However, the *Lyondelle* case is distinguishable from the case at bar. In this case, the Court has determined that Shell, the taxpayer, *does* owe money to the taxing authority. Therefore the reasoning of *Lyondelle* is of no moment in today's decision.[7]

---

and $107,659.98 in attorneys' fees.

[7] Shell makes a similar argument for interest owed, noting that interest is allowed by law to compensate for the loss of use of money. *See Trans-Global Alloy, Ltd. v. First Nat'l Bank*, 583 So. 2d 443, 457-58 (La. 1991). Shell argues that because it has in actuality overpaid its taxes, interest cannot be due. Shell's argument in regards to interest must fail for the same reason as its argument in regards to attorneys' fees. The parties do not seem to dispute that the correct amount of interest, as properly calculated, should be $480,203.24.

Shell's argument against audit costs follows a slightly

Shell further argues that penalties are unavailable in Louisiana tax cases when the taxpayer acts in good faith.  Shell cites three main cases in support of this assertion.  *BP Oil Co. v. Plaquemines Parish Gov't*, 651 So. 2d 1322, 1334 (La. 1994); *J. Ray McDermott, Inc. v. Morrison*, 705 So. 2d 195, 207 (La. App. 1 Cir. 1997); *St. John the Baptist Sch. Bd. v. Marbury-Patillo Const. Co.*, 239 So. 2d 387, 393 (La. App. 4 Cir. 1970).

In *BP Oil*, the Louisiana Supreme Court considered whether taxes were due on waste gas or boiler fuel in connection with a refinery.  In the case, BP Oil was assessed penalties for failure to pay a tax on this chemical waste gas produced at its refinery in Plaquemines Parish.  Amongst several holdings, the Supreme Court held that because there were genuine issues of material fact as to whether BP had a good faith belief that it had fully complied with tax regulations, it was in error for the trial court to grant summary judgment against BP on the issue. The Supreme Court cited *St. Pierre's Fabrication & Welding, Inc. v. McNamara*, 495 So.2d 1295, 1298 (La. 1986) in support of the existence of a good faith exception to the imposition of penalties.  In *St. Pierre's* the court determined that when a

different track.  However, to the extent that it partly relies on an argument that audit costs cannot be assessed when there is no aggregate underpayment, that argument fails for the same

taxpayer "was under the belief it had a legal right not to make tax returns and its failure to file such returns was not done with any intention to avoid payment," then equity required that the taxpayer be relieved from penalties.  *See also J. Ray McDermott*, 705 So. 2d at 207 (holding that there was no manifest error in determining that the taxpayer was entitled to a good faith exception to penalties).

The Parish asserted at oral argument that there is no good faith exception to the penalty statutes.  The Parish further asserts that assessment of penalties is mandatory under the ordinances and neither the Parish nor the courts have the authority to waive those penalties.  The Parish further argues that several Louisiana Courts of Appeal have indicated that there is no good faith exception.  *See, e.g. Turner Corp. v. Parish Sch. Bd. of the Parish of St. Charles*, 704 So. 2d 848, 850-51 (La. App. 5 Cir. 1997).

The *Turner* court distinguished *BP Oil* and *St. Pierre's*.  In *BP Oil*, the court noted that BP had reason to believe that tax was not owed at all.  Indeed the litigation in *BP Oil* surrounded whether tax was due on the waste gas at all.  *See id.* Further the court held that in *St. Pierre*, where a taxpayer was told that he

reasons.

did not owe the taxes, he could have an equitable claim that penalties should not be due. *Id.* The *Turner* court continued that when a taxpayer simply did not pay a tax, there was no provision in law or equity that would prevent the imposition of penalties. *Id.*

The same is true in this case. The good faith exception relied on by Shell is not applicable in this case. While the Court does not believe that there was any malicious intent by Shell in not paying the Union Carbide taxes, there has never been any serious contention that taxes were not owed on the those transactions. *See Sch. Bd. of the Parish of St. Charles v. Shell Oil Co.*, 2007 WL 1655578, at *7 (E.D. La. June 6, 2007). Just like in the *Turner* case, whether through clerical error, or pure mistake, Shell has not paid the taxes, and therefore penalties are due.

Shell contends that the Parish's claim for penalties exceeds the statutory amount. The statute provides that penalties are assessed at a maximum of 25% of the aggregate tax owed. *See* St. Charles Parish School Board, La., General Sales and Use Tax Ordinance (Sept. 1, 1965)(as amended) § 9.03. This Court has determined that Shell owes $458,734.00 in taxes. 25% of this amount is $114,683.50. Therefore, Shell will be assessed

$114,683.50 in penalties.

Shell argues that the Parish is not entitled to audit costs because the Parish ordinance authorize assessing of audit costs only when a taxpayer fails to file a report, or if the taxpayer makes a grossly inadequate report. St. Charles Parish School Board, La., General Sales and Use Tax Ordinance (Sept. 1, 1965)(as amended) § 9.04.[8]  In the state version of this statute, the legislature defined that a "grossly incorrect report" means "any report filed where there is a substantial understatement of tax for any taxable period."[9]  LA. REV. STAT. ANN. § 47:337.75(B). The statute continues that an understatement is substantial if "it exceeds the greater of ten percent of the tax required to be shown on the return for the taxable period; or ten thousand dollars." *Id.* § 47:337.75(B)(1).  Regardless of whether Shell filed a grossly incorrect report, the Parish is not entitled to audit costs.

The Parish asserts that according to the ordinance in

---

[8] Shell also cites LA. REV. STAT. ANN.  § 47:337.75A as the state's analogue to the Parish ordinance.

[9] The state statute also allows the assessment of audit costs when a taxpayer makes a false or fraudulent report.  LA. REV. STAT. ANN. § 47:337.75(A).  The statute defines a false or fraudulent report as a report that is made with the intent to evade taxes that are due.  *Id.* § 47:337.75(B)(2).  There does not appear to be any allegation that Shell filed any report with a malicious intent.

effect, when the Parish is required to "examine the books, record, or documents or an audit thereof, then the Treasurer shall add to the assessment the cost of such examination" St. Charles Parish School Board, La., General Sales and Use Tax Ordinance (Sept. 1, 1965)(as amended) § 9.04.  However, the assessment appears to be an actual cost standard, in contradistinction to the attorneys' fees provision which has a defined statutory rate.  The Parish has not provided the Court with any documentation which would support its assertion that it has spent $137,620.24.

This Court finds that in the absence of specified documentation that can support the Parish's assessment of audit costs, Shell should not be required to pay them.  This conclusion is bolstered when it is considered that the delinquent tax that was eventually assessed against Shell was discovered during litigation and the parties have always agreed to the amount of the taxes due as well as the fact that the tax was due on these transactions.  Therefore the Parish is not entitled to audit costs in this litigation.

Shell's final argument with regards to attorneys' fees is that the amount assessed is unreasonable.  The Parish ordinance provides that attorney's fees are assessed at a rate of 10% of

the aggregate of tax, interest, and penalty.  This Court has so far determined that Shell owes $458,734 in tax, $480,203.24 in interest, and $114,683.50 in penalties, for a total of $1,053,620.74.  Therefore, the statutory maximum that could be awarded is $105,362.07.  However, the maximum attorneys' fee award is subject to a test for reasonableness by the Court.  *See City of Baton Rouge v. Stauffer Chem. Co.*, 500 So. 2d 397, 401 (La. 1987); *Enterprise Leasing Co. v. Curtis*, 07-354, 2007 WL 3246588 (La. App. 1 Cir. Nov. 2, 2007).

The *Stauffer Chemical* court held that even when a statute specifically sets out attorneys' fees, those fees are tested for reasonableness.  The court held that the statute cannot override an attorney's ethical duty not to accept a clearly excessive fee.  *Id.* at 400; *see also* LA. RULES OF PROF'L CONDUCT R. 1.5. Therefore the court held that a trial court must determine whether a fee is reasonable using the factors enumerated in rule 1.5.  Those factors include the following:

1.  The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

2.  The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude

other employment by the lawyer;

3.    The fee customarily charged in the locality for
      similar legal services;

4.    The amount involved and the results obtained;

5.    The time limitations imposed by the client or by the
      circumstances;

6.    The nature and length of the professional relationship
      with the client;

7.    The experience, reputation, and ability of the lawyer
      or lawyers performing the services; and

8.    Whether the fee is fixed or contingent.

Louisiana Courts have held that trial courts are afforded great
discretion in determining whether a fee is reasonable. *See J.
Ray McDermott, Inc. v. Morrison*, 702 So. 2d 364, 367 (La. App. 1
Cir. 1997).

The Parish has not presented any evidence which would tend
to suggest that the fee is reasonable or unreasonable. Rather,
the Parish relies on assertions that assessment of attorneys'
fees is mandatory at the rate of 10% of the aggregate amount
recovered. On the other hand, Shell insists that this Court
should only consider the Parish's attorneys' fees in relation to
the claim on which it was successful, namely the Union Carbide

22

Transactions alone.   In general, a court should not award attorneys' fees when taxes are not owed.   *See State v. BP Exploration & Oil, Inc.*, 686 So. 2d 823, 831 (La. 1997). Therefore, the Court cannot and should not consider time and energy expended by counsel in regards to an attempt by the Parish to collect taxes on the chemical waste gas or any other tax that the Parish tried to collect in this litigation. Therefore the Court must determine whether the $105,362.07 is a reasonable fee for the collection of the sales tax on the Union Carbide transactions.

Shell asserts that the fee is clearly excessive given that, once discovered, Shell and the Parish immediately agreed that the tax should have been paid, and there has not been a great deal of legal work conducted in the collection of these taxes. However, the unpaid Union Carbide taxes were only discovered as a result of the underlying litigation brought by the Parish. And once it was determined that there was an underpayment, Shell did not immediately pay the taxes die, but required the Parish to litigate whether the unpaid taxes could be collected.   Shell also resisted payment of penalties and interest on the unpaid taxes.   Under these circumstances, attorney's fees in the amount of $105,362.07 on a judgment in excess of $1 million does not

strike this Cou0rt as excessive.  Accordingly, the Court issues the following orders:

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED;**

**IT IS FURTHER ORDERED** that judgment is **GRANTED** in favor of Plaintiff in the amount of $458,734.00 in back taxes, $114,683.50 in penalties, $480,203.24 in interest, $105,362.07 in attorneys' fees and $0 in audit costs, for a total of $1,158,982.81.

New Orleans, Louisiana this the 10th day of April, 2008.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE